IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM J. WARREN,<br><br>*Plaintiff*,<br><br>v.<br><br>JOHN WILEY & SONS, INC.,<br><br>*Defendant*. | Case No. 12-cv-5070 (JPO) (MHD)<br><br>Hon. J. Paul Oetken<br><br>ECF Case<br>Electronically Filed |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Danial A. Nelson
Kevin P. McCulloch
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
dan@nmiplaw.com
kevin@nmiplaw.com

*Attorneys for Plaintiff*

Dated: March 10, 2015

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 1

ARGUMENT ..................................................................................................................... 7

I.    APPLICABLE LEGAL STANDARD. ..................................................................... 7

II.   THE PARTIES AGREED TO SETTLE THE CLAIMS IN SUIT
FOR $█████. ............................................................................................................. 8

    A.    The First *Winston* Factor Favors Finding A Binding Agreement. ................. 8

    B.    The Second *Winston* Factor Is Neutral. ......................................................... 11

    C.    The Third *Winston* Factor Favors Finding At Least A Binding Preliminary Agreement. ........................................................... 11

    D.    The Fourth *Winston* Factor Favors Finding A Binding Agreement. ............ 13

CONCLUSION ................................................................................................................ 14

## TABLE OF AUTHORITIES

**CASES**

*Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir. 1989) .................................................................................................................. 8

*Clark v. Buffalo Wire Works Co., Inc.*, 3 F. Supp. 2d 366 (W.D.N.Y. 1998) .................................................................................................. 11

*Francis v. Home Box Office*, No. 04-cv-7430, 2005 WL 1020863 (S.D.N.Y. Apr. 28, 2005) ....................................................................................... 9

*Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC*, No. 04-cv-1621, 2005 WL 1377853 (S.D.N.Y. June 9, 2005) ....................... 8, 10, 11, 13

*Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269 (S.D.N.Y. 1995) .............................................................................................................. 8

*Macdonald v. Dragone Classic Motor Cars*, No. 95-cv-499, 2003 WL 22056626 (D. Conn. Apr. 29, 2003) ................................................................. 8

*Melwani v. Jain*, No. 02-cv-1224, 2004 WL 936814 (S.D.N.Y. Apr. 29, 2004) ........................................................................................................... 11

*Register.Com. Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ....................................................... 7

*Sommer v. Hilton Hotels Corp.*, 376 F.Supp. 297 (S.D.N.Y. 1974) ............................................. 12

*Teachers Insurance and Annuity Assoc. of Am. v. Tribune Co.*, 670 F. Supp. 491 (S.D.N.Y. 1987) ............................................................................. 12

*V'Soske v. Barwick*, 394 U.S. 921 (1969) ............................................................................... 9, 10

*Villeroy & Boch S.A.R.L. v. THC Sys., Inc.*, No. 84-cv-8073, 1991 WL 102520 (S.D.N.Y. June 3, 1991) ........................................................................ 9, 10

*Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1985) ....................................... 7, 8, 10

**OTHER AUTHORITIES**

22 N.Y. Jur. 2d, Contracts § 9 ................................................................................................... 7

## INTRODUCTION

Plaintiff William Warren ("Plaintiff"), by and through counsel, hereby submits this Memorandum of Law in support of his Motion to Enforce Settlement Agreement relating to his claims in suit against Defendant John Wiley & Sons, Inc. ("Defendant" or "Wiley").

On February 13, 2015, Plaintiff accepted Wiley's offer to settle this lawsuit for $███████. This agreement was the culmination of months of settlement discussions that all related explicitly and unambiguously to a limited release of only the claims in suit. Nearly two weeks later, Defendant's counsel circulated a draft written agreement which included a general release. Although such a broad release was contrary to the explicit agreement reached between the parties, Wiley insists that a general release was a condition of any settlement and has thus indicated that it no longer intends to honor its agreement to settle this action. Plaintiff thus brings this motion to enforce the parties' settlement agreement or, in the alternative, to compel Wiley to negotiate any alleged open terms in good faith within the parameters or their agreement which was to settle only the claims in suit rather than granting Wiley a general release.

## FACTUAL BACKGROUND

The parties engaged in preliminary settlement discussions at the outset of this case and those negotiations involved discussion of a general release. On November 18, 2013, Wiley broke off the parties' negotiations by opting instead to make an Offer of Judgment pursuant to Federal Rule Civil Procedure 68. (*See* McCulloch Decl. ¶ 2 Ex. 1.) Plaintiff did not respond to this Offer of Judgment and thus it expired by its terms. The parties did not discuss the prospect of settlement again until November 2014, nearly a year later.

1

Since settlement discussions restarted in November 2014, neither party raised the issue of a general release. Instead, all renewed settlement discussions between the parties have expressly and unambiguously related only to the claims in suit:

| Party | Date | Language of Offer related to Scope of the Release | McCulloch Decl. Exh. |
|---|---|---|---|
| Plaintiff | 11/13/2014 | "Our client has authorized us to settle ***the claims in suit*** for . . ." | 2 |
| Defendant | 12/2/2014 | "In light of the foregoing, we have been authorized to offer . . . to settle ***this matter***." | 3 |
| Plaintiff | 12/10/2014 | "I am authorized to agree to a release of claims against Wiley related to ***this photo*** . . ." | 4 |
| Defendant | 12/15/2014[1] | "Wiley is willing to resolve all past uses of ***[this] photograph*** for . . ." | 5 |
| Defendant | 2/10/2015 | "I have been authorized to increase Wiley's offer to settle ***this case*** to . . ." | 7 |
| Defendant | 2/13/2015 | "I have obtained authority to resolve ***this case*** for . . ." | 8 |

As this exhaustive recounting of the parties' settlement offers since November 2014 demonstrates, the parties explicitly negotiated a release related only to "*the claims in suit*" or only "*this case*" or only "related to *this photo*" and did not ever discuss a general release. All of Wiley's relevant settlement communications have included express offers to settle the claims in suit for a specified amount and, significantly, none of those communications included an express reservation of the right not to be bound in the absence of a formal written agreement.

On February 13, 2015, Wiley increased its offer to $▇▇▇▇▇ and Plaintiff "accepted" that offer the same day. (*Id.* Ex. 9.) Wiley thus made an offer that included all essential and material

---

[1] Wiley's offer dated December 15, 2014 was the last offer exchanged between the parties prior to the settlement conference before Magistrate Judge Dolinger. (*See* Dkt. No. 75.) The parties did not make any progress toward settlement during the conference. The parties restarted settlement talks again on February 4, 2015. (*See* McCulloch Decl. Ex. 6.)

2

terms, and Plaintiff accepted that offer.  The parties thus reached a binding agreement for Plaintiff to release his claims in this suit in exchange for $███████  The parties' settlement communications leave no doubt that the agreement reached by the parties was expressly limited to settlement of only the "claims in suit" and "this case."  Although the parties did discuss ultimately reducing their agreement to writing, neither party indicated that this was a condition of reaching an agreement to settle the claims in suit.  (*See* McCulloch Decl. ¶10.)

Despite the clear language of the parties' settlement communications, Wiley attempted to smuggle different terms into its draft agreement, including provisions for both a general release and a license to use Plaintiff's photo in perpetuity.  (*See id.* Ex. 10 at ¶4 & ¶5.)  Plaintiff's counsel struck both provisions and added additional language reflecting the actual terms of the parties' agreement to limit the settlement to the claims and photo in suit.  (*See id.* Ex. 11.)

Defendant's counsel responded by suggesting, without explanation, that these were still "open issues" and claiming that "[a]ll of the prior discussions had been premised on a general release of all possible claims.  In fact, if you check earlier emails, you will see that you referred to a general release. That is a condition of any settlement here."[2]  (McCulloch Decl. Ex. 12.)  As the exhaustive recounting of the parties' settlement discussions set forth above demonstrates, however, Wiley's claim that the parties' settlement discussions had been "premised on a general release of all possible claims" is baseless.

Prior to bringing this motion, Plaintiff's counsel attempted repeatedly to discuss the issue with Wiley in good faith, including by directing Wiley's attention to the clear language in the

---

[2] Wiley also suggested that there were other "open issues" reflected in the changes proposed by Plaintiff.  In actuality, however, the only other proposed changes to Wiley's draft agreement related to ancillary issues such as the timing of payment and including standard representations from Wiley related to its authority to enter the agreement.  (*See* McCulloch Decl. Ex. 11 at ¶1 & ¶15.)  All other proposed changes related to the general release and license terms that Wiley improperly attempted to include in the parties' agreement.

3

parties' settlement offers that unequivocally demonstrated that the parties discussed a release related *only* to the "claims in suit." (*Id.* Ex. 13 (emphasized in original).) Plaintiff also noted:

> As the emails I highlighted below indicate, we've been clear about the scope of the release all along. The scope of the release also could not be surprising given that this case involves only 1 photo and Wiley never provided any info relating to any other uses of other photos, and thus the settlement valuation discussions have been premised on 1 photo used in this Lencioni series all along. There is no legitimate basis for Wiley to demand a broader release that has never been discussed and wasn't used as a basis for us to determine the settlement amount.

(*Id.* Ex. 14)

Rather than addressing the points raised by Plaintiff, Wiley instead reiterated that "we do require a general release for any claim up to the time of settlement" and attempted to justify the inclusion of the general release and also the perpetual license by referring to a prior settlement negotiated between our law firm and Wiley *almost 2 years ago* related to a *different client* who asserted claims in a different case involving a different photo in a different book. (*Id.* Ex. 15 at 2.) In response, Plaintiff's counsel reminded Wiley that this prior agreement was not even possibly relevant here given that he was not a party to that agreement and "it wasn't shared with Mr. Warren and he never agreed to be bound by or even model his release on any prior agreement." (*Id*. at 1.) We also noted that Wiley again failed to provide any explanation "as to why you think this broader release is something we ever discussed as a term of our bargain, which we understood to be a done deal." (*Id.*)

After Wiley ignored this e-mail, we again attempted to engage Wiley in a good faith discussion of the issue and cautioned that we would have no choice but to raise the issue with the Court if Wiley did not withdraw its improper and belated demand for a general release:

> As my email yesterday demonstrated, our settlement negotiations related only to claims involving the photo and uses in suit and not a general release. The emails also show that both parties' valuation of the settlement included only the claims in suit and not any value for a broader general release.

4

> Both parties understood the terms of the release we were negotiating and we reached a clear meeting of the minds to settle for such a release of only the claims in suit for $█████.  Since our negotiation and all discussions of the settlement amount related to the claims in suit only, there is no basis for Wiley to now demand a broader release that was not a term we previously discussed.  We also never discussed any ongoing or new license and thus that also was not a part of the agreement we reached.
>
> Please advise by tomorrow whether Wiley will remove these new terms from the settlement agreement.  Otherwise, we will file a letter motion with the Court seeking to enforce the settlement and compel Wiley to make payment of the settlement amount.

(McCulloch Decl. Ex. 16.)

Despite our best efforts, Wiley once again refused to engage in a substantive dialogue regarding its change in position.  Instead, Wiley's counsel simply repeated the refrain that Wiley "understood" that the scope of the release and ongoing license were "open issues" that were not resolved and thus it was "withdraw[ing] its offer to settle the case[.]" (*Id.* Ex. 17)  Once again, Plaintiff provided a detailed response that discredited Wiley's position:

> Your contention that there is an "open issue" regarding the scope of the release or the additional license is baseless.  As I demonstrated conclusively – and which you have never disputed – my emails negotiating the release were explicit and unequivocal that the release would be limited to the photo/claims in suit.  You even conceded as much during our call today.  There also was never any discussion of a forward-going license and Wiley's effort to demand inclusion of any license in the release was improper as well – so claiming there are "open issues" related to the sell-off and merger provisions is clearly an effort to fabricate a dispute where there is none.
>
> Wiley cannot "withdraw" an offer because we already accepted.  We will write the Court to request leave to move to enforce the agreement.  In that [filing] we will be providing the Court with the email exchanges related to our settlement discussions to demonstrate that there was never any "open issue" regarding the scope of the release and that the claims in suit were settled for $█████.

(McCulloch Decl. Ex. 18.)  Later that same day, we also challenged Wiley to "identify ANY basis for [its] position that our settlement [agreement] related to a general reason and not a

5

release of only the claims in suit." (*Id.* Ex. 19 at 3.) Defendant's counsel again ducked the issue and merely responded: "Our communications on all of these issues have been clear, and you have our position." (*Id.*) No further explanation was offered.

In a final effort to avoid involving the Court, Plaintiff's counsel again requested that Wiley provide an explanation for its position regarding the general release issue:

> I have your position that the scope of the release is an "open issue" but I have no idea what the basis for that position is. None of your communications ever mentioned, let alone insisted on, a general release. Nor did any of my communications ever mention a release beyond the claims in suit. And your recent communications have never explained why you think the scope of release we agreed to grant in exchange for the $▇▇▇▇ offer we accepted was broader than the claims in suit. Whereas I have provided you with references to my emails that were explicit as to the scope of the release for the bargain we struck, you have not yet responded to this point other than with conclusory statements.
>
> During our call earlier today, you agreed that your position that this was a negotiation for a general release was merely "in [your] head" and that is why I say you conceded the point. If you disagree and believe that there is anything in our settlement communications that would possibly support your position regarding the scope of the release, then I would appreciate you explaining your position.

(*Id.* Ex. 19 at 2.)

Wiley's response was typically unresponsive: "I am not going to debate this. I said that my understanding was that we were talking about a general release." (*Id.*) Plaintiff's counsel thus concluded the discussion as follows:

> I hate repeating myself, but you've never explained what is the basis for your understanding that we were talking about a general release or that there was any ambiguity on this point. As you know, we are preparing to involve the court and thus I have repeatedly attempted to confer with you on this issue. This is the central issue that you contend was open and yet you refuse to explain the basis for your position. That is contrary to your duty to meet and confer in good faith. It is apparent that you are ducking providing an actual response to this crucial issue because you cannot provide any support for your view that there was ever any ambiguity about the scope of the release.

(*Id.* at 1.)

6

**ARGUMENT**

The parties' correspondence discredits Wiley's contention that the settlement negotiated by the parties either involved a general release of all possible claims or that the scope of the release was an open issue that required additional negotiations.  On the contrary, all of the parties' settlement offers unambiguously pertained to only a limited release.  Nothing in the parties' correspondence supports Wiley self-serving contention that the parties agreed upon a general release or that the scope of the release was ambiguous.

Because the parties' settlement correspondence demonstrates that the agreement reached by the parties on February 13, 2015 was unambiguous and did not include a general release or any forward-going license, Wiley's effort to belatedly change the terms of this agreement was improper and the Court should enforce the terms of the parties' original agreement or compel Wiley to negotiate a final agreement within the bounds of the parties' preliminary binding agreement.  Wiley's stubborn and inexplicable refusal to discuss the issue in good faith also justifies the Court awarding attorneys' fees and costs to Plaintiff related to and incurred in bringing this motion.

**I.   APPLICABLE LEGAL STANDARD.**

To establish the existence of an enforceable agreement under New York law, there must be "an offer, acceptance, consideration, mutual assent, and an intent to be bound." *Register.Com. Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004); *see also* 22 N.Y. Jur. 2d, Contracts § 9.  Under New York law, a binding contract may arise even without the parties "memorializing their agreement in a fully executed document" and the contract will be enforceable "even if the parties contemplate a writing to evidence their agreement." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  The Second Circuit has concluded that, "[i]n such a case, the mere intention to commit the agreement to writing will not prevent contract

7

formation prior to execution" unless a party *expressly* "communicates an intent not to be bound until he achieves a fully executed document." *Id.*

"'Once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing.'" *Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC*, No. 04-cv-1621, 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) (quoting *Macdonald v. Dragone Classic Motor Cars*, No. 95-cv-499, 2003 WL 22056626 at *6 (D. Conn. Apr. 29, 2003)).

In *Winston*, the Second Circuit identified several factors that courts should consider to determine whether the parties intended to be bound in the absence of a document executed by both side, including: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." 777 F.2d at 80.

In cases such as this, this Court has determined "that the first factor is the most important." *Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 293 (S.D.N.Y. 1995) (citing *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir. 1989)).

## II.   THE PARTIES AGREED TO SETTLE THE CLAIMS IN SUIT FOR $▮

### A.   The First *Winston* Factor Favors Finding A Binding Agreement.

The first *Winston* factor weighs in favor of finding that the parties reached a binding agreement because Wiley did not make "an express reservation of the right not to be bound in the absence of a writing." *Winston*, 777 F.2d at 80. As demonstrated conclusively above, none of the parties' settlement correspondence after Wiley made an Offer of Judgment in November 2013 ever discussed a general release. Instead, all of the parties' settlement discussions related

explicitly and unambiguously to only the claims in suit involving only a single photo.  Thus, when Plaintiff accepted Wiley's settlement offer on February 13, there was no question that the release agreed upon related only to the photo and claims in suit and did not extend to other photos or different claims. These same communications also make clear that Wiley's alternative position that the scope of the release being negotiated was an "open issue" is similarly baseless.

Given that the scope of the release negotiated by the parties was unambiguous, it is not surprising that Wiley's counsel refused to discuss the issue in good faith and instead repeatedly ducked requests for explanation.

Significantly, Wiley's settlement offers also did not include any indication that Wiley did not intend to enter into a binding agreement in the absence of a formal written agreement. Although the parties did discuss and indicate an intent to ultimately reduce their agreement to writing, that did not preclude the parties from reaching a binding agreement to settle this case for the agreed upon amount. *See, e.g.*, *V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir.), *cert. denied*, 394 U.S. 921 (1969) ("[T]he mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event[.]"); *Francis v. Home Box Office*, No. 04-cv-7430, 2005 WL 1020863 at *4 (S.D.N.Y. Apr. 28, 2005) ("The intent to reduce a valid oral settlement agreement to writing, however, does not prevent that oral agreement from being enforced."); *Villeroy & Boch S.A.R.L. v. THC Sys., Inc.*, No. 84-cv-8073, 1991 WL 102520 at *4 (S.D.N.Y. June 3, 1991) ("[A]n informal agreement may be binding despite the parties' contemplation to memorialize the contract into a written document.").

Wiley's anticipated argument that its expectation that a formal agreement was necessary was somehow *implied* by the parties' discussions of subsequently drafting formal settlement

9

papers is unavailing and consistently has been rejected by this Court. *See Hostcentric Technologies*, 2005 WL 1377853, at *5 (rejecting argument that party "did not intend to be bound by any agreement in the absence of a fully executed, written agreement" where this reservation "was not 'explicit,' but should be 'implied' from the fact that the parties intended to draft formal settlement papers").

Wiley's contention that the parties did not enter into a binding agreement requires more than a showing that the parties intended to subsequently reduce their agreement to a formal writing. Instead, Wiley must offer "proof that the parties did not intend to form an agreement whereby the validity thereof depended on formal execution of a written document." *Villeroy & Boch*, 1991 WL 102520 at *4. Specifically, Wiley must show that it explicitly stated a reservation of its right not to be bound absent an executed agreement. *See, e.g.*, *Winston*, 777 F.2d at 80 (holding contract formed unless objecting party expressly "communicates an intent not to be bound until he achieves a fully executed document"); *Hostcentric Technologies*, 2005 WL 1377853, at *6 (holding "more is needed" and reservation of right not to be bound must be explicit). As the Second Circuit has explained:

> To overcome the reasonable inference we draw from the language of the correspondence that the parties did indeed intend thereby to create a binding contract, [the party disputing the existence of an agreement] must do more than merely point to the circumstance that a formal document was contemplated: they must show either that both parties understood that their correspondence was to be of no legal effect or that [the party seeking to enforce the agreement] had reason to know that [the party disputing the agreement] contemplated that no obligations should arise until a formal contract was executed.

*V'Soske*, 404 F.2d at 499.

Because Wiley did not expressly reserve its right not to be bound, the first factor favors Plaintiff's position that a binding agreement was reached even in the absence of a written agreement executed by the parties.

Nor is there any support for Wiley's position that the agreement was not binding because the scope of the release was an "open issue" that required additional negotiations. As Plaintiff demonstrated above, all of the parties' settlement communications were explicit that the release being negotiated related only to "the claims in suit" and there was never any discussion of a broader general release. Wiley's recent contention that its "understanding" that the parties had agreed to a general rather than limited is unsupported and plainly mistaken and thus cannot invalidate the parties' agreement. *See Clark v. Buffalo Wire Works Co., Inc.*, 3 F. Supp. 2d 366, 373 (W.D.N.Y. 1998) ("[T]he enforceability of a release does not depend on whether the releasor was subjectively aware of the precise claims to which the release pertains upon executing the release."); *Melwani v. Jain*, No. 02-cv-1224 (DF), 2004 WL 936814, at *6 (S.D.N.Y. Apr. 29, 2004) (holding a party's "bald and belated assertion that he did not understand the nature of the releases to which he agreed cannot serve to invalidate the on-the-record agreement").

### B. The Second *Winston* Factor Is Neutral.

The second *Winston* factor is neutral because Wiley effectively repudiated the parties' agreement only one day after Plaintiff's counsel objected to the general release and license provisions that Wiley attempted to smuggle into the agreement, and thus it is not surprising that there was no performance. *See Hostcentric Technologies*, 2005 WL 1377853, at *8.

### C. The Third *Winston* Factor Favors Finding At Least A Binding Preliminary Agreement.

Wiley likely intends to base much of its opposition on Plaintiff's counsel using the word "tentative" in describing the parties' agreement. As the parties' subsequent correspondence reflects, however, the central aspects of the parties' agreement were resolved. Nevertheless, even if the parties did not discuss all possible terms that might be included in a subsequent written agreement, the parties did reach a meeting of the minds on the essential and material

terms of their agreement. Namely, Plaintiff agreed to release his claims in suit in exchange for $██████. These are the central terms of the agreement, and they include an offer for consideration that was unambiguously "accepted."

Even assuming *arguendo* that Wiley were correct that as of February 13 there still remained "open issues" that needed to be discussed, once the parties reached a binding agreement on the financial and release terms Wiley was obligated to address other ancillary terms in good faith and *within the parameters of the material terms of their preliminary agreement*. As this Court has held, even "preliminary" contracts may be binding:

> Preliminary contracts with binding force can be of at least two distinct types. One occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation. Such an agreement is preliminary only in form—only in the sense that the parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable. . . .
>
> The second and different sort of preliminary binding agreement is one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated. Although the existence of open terms generally suggests that binding agreement has not been reached, that is not necessarily so. For the parties can bind themselves to a concededly incomplete agreement in the sense that they accept a mutual commitment to negotiate together in good faith in an attempt to reach final agreement within the scope that has been settled in the preliminary agreement.

*Teachers Insurance and Annuity Assoc. of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987) (citing *Sommer v. Hilton Hotels Corp.*, 376 F. Supp. 297 (S.D.N.Y. 1974)).

Thus, even if Wiley were correct that additional terms remained to be discussed, the parties' February 13, 2015 agreement – at the very least – obligated Wiley "to negotiate the open issues ***in good faith*** in an attempt to reach the alternate objective ***within the agreed framework***" and Plaintiff may demand "that his counterparty negotiate the open terms in good faith toward a final contract incorporating the agreed terms." *Id.* (emphasis added). As this Court has

explained, even if the agreement between parties is only a "binding preliminary commitment" and not a complete agreement, the parties' expectations in reaching the preliminary commitment must be honored and thus the parties are barred "from renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to the preliminary agreement." *Id.* It thus was improper for Wiley to attempt to use the process of reducing the parties' agreement to writing as an opportunity to either change or avoid the core terms of the parties' bargain.

### D.    The Fourth Factor Favors Finding A Binding Agreement.

The fourth *Winston* factor – whether the agreement is the type of contract that is usually committed to writing – also favors Plaintiff.

In construing this factor, this Court has noted that "[s]ince the *Winston* test is designed to determine if a settlement agreement is binding absent a formally executed agreement, it would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written." *Hostcentric Technologies*, 2005 WL 1377853, at *9. This Court thus has clarified that "the correct question is whether the settlement agreement terms are sufficiently complex or involve long time periods, such that there should be a formal writing." *Id.* (collecting cases).

Unlike *Winston* and other cases where courts have found that a written agreement was typically required, the settlement agreement here related to the payment of $[redacted] for a release of only the claims in suit, which involved only one photo being used in one project. The parties' agreement was not complex, did not include any ongoing obligations, and did not include any contingent payments or payments over many years. On the contrary, Wiley's draft agreement required payment within 21 days and Wiley's counsel even indicated that Wiley would "do its best to pay as quickly as possible." (Ex. 10 at 1, ¶ 2 & Ex. 12.)

Because this was not a complex claim or settlement, this is not the sort of agreement that typically needs to be reduced to writing and thus this factor also favors Plaintiff.

## CONCLUSION

For all of these reasons, Plaintiff requests that the Court find that the parties reached a binding agreement to settle only the claims in suit for $██████ or compel Wiley to negotiate a final agreement within the parameters of the parties' agreement to settle only the claims in suit and not any broader release. Plaintiff also requests that the Court award him all costs and attorneys' fees related to this dispute and bringing this motion and permit Plaintiff's counsel to file a submission of fees following the Court's ruling on this motion.

Dated:  New York, New York
        March 10, 2015

NELSON & McCULLOCH LLP

*[signature: Kevin McCulloch]*

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
155 East 56th Street, 3rd Floor
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
dan@nmiplaw.com
kevin@nmiplaw.com

*Counsel for Plaintiff*

14