IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WILLIAM J. WARREN, | Case No. 12-cv-5070 (JPO) (MHD) |
| *Plaintiff*, | Hon. J. Paul Oetken |
| v. | ECF Case |
| JOHN WILEY & SONS, INC., | Electronically Filed |
| *Defendant*. |  |

**REPLY IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION TO ENFORCE SETTLEMENT AGREEMENT</u>**

Danial A. Nelson
Kevin P. McCulloch
NELSON & McCULLOCH LLP
155 East 56th Street
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
dan@nmiplaw.com
kevin@nmiplaw.com

*Attorneys for Plaintiff*

Dated: April 6, 2015

Plaintiff William Warren ("Plaintiff"), by and through counsel, hereby submits this reply in support of his Motion to Enforce Settlement Agreement relating to his claims in suit against Defendant John Wiley & Sons, Inc. ("Defendant" or "Wiley").

## INTRODUCTION

Defendant's current contention that the "parties could not come to an agreement as to the scope of the settlement release and other material terms" is disingenuous.  As the parties' written communications reflect, counsel for the parties expressly, uniformly, and unambiguously discussed only a settlement of the "the claims in suit."  (*See* Pl. Memo at 2.)  At no point during the relevant negotiations did Defendant's counsel ever request a general release or otherwise suggest that Wiley was seeking a release related to unspecified uses of unknown photos.  Indeed, the first time that the term "general release" even appears in the parties' written exchanges regarding settlement is in Defendant's counsel's e-mail dated March 2, 2015, nearly *three weeks after* Plaintiff accepted Defendant's monetary settlement offer. (*See* McCulloch Decl. Ex. 14.)

In that e-mail, Defendant's counsel attempts to justify his client's stark departure from the parties' agreement by baldly asserting that "all of the prior discussions had been premised on a general release of all possible claims.  In fact, if you check earlier emails, you will see that you referred to a general release."  (*Id.* at 2.)  Both of these contentions – that the parties' discussions were "premised" on a general release or that Plaintiff's counsel "referred" to a general release – are simply false.

Prior to this litigation, our firm repeatedly demanded usage information from Wiley on behalf of various copyright owners and, to attempt to facilitate such an exchange of information, attempted to negotiate a non-disclosure and tolling agreement with Wiley's in-house counsel, Ashima Aggarwal.  (McCulloch Reply Decl. ¶ 2.)  When it became apparent that Wiley would

not agree to full disclosure of all usage information for all of our client's photos and would not

agree to disclose any information related to photos licensed through third-party agencies, we

made "absolutely clear" that we would not discuss or grant "general releases" to Wiley:

> **<u>I want to be absolutely clear that any settlement discussion will be limited to the images and publications involved in this process, there will be no general releases</u>** and our clients' reserve all rights and claims -- and fully intend to pursue actions -- regarding every other image obtained by Wiley for which Wiley refuses to disclose usage information[.]

(*Id.* Ex. 20.)  In light of these prior discussions, it is seriously disingenuous for Mr. Rosenthal to

now contend that any settlement discussions with Wiley were "premised' on a general release of

all possible claims.

Wiley's counsel was just as mistaken that the communications from Plaintiff's counsel

during the parties' relevant settlement discussions ever "referred" to a general release.  As the

Court can confirm for itself, every settlement communication exchanged between counsel for the

parties between November 2014 and the parties' agreement on February 13, 2015 referred only

to the "claims in suit" or claims related to "this photo."  (Pl. Memo. at 2.)  Despite being

repeatedly challenged to identify any references in the relevant communications to a general

release, Defendant's counsel ducked the issue and, like the proverbial ostrich, stuck his head in

the sand.  (*See, e.g.*, McCulloch Decl. Exs. 18 & 19.)

Given the clear record on this point, it appears either that Wiley's outside counsel failed to

advise his client of the terms of the settlement offers being conveyed and failed to express his

client's insistence on a general release or Wiley had a remarkable and unexplained change of

heart in a matter of weeks.  If the former occurred, then Wiley may have a serious issue to take

up with its outside counsel, but it certainly has no grounds for avoiding the terms of the parties'

agreement – or, at the very least, the parties' "preliminary binding agreement" – to settle only the

claims in suit for a specified monetary amount.  There can be no serious doubt that Wiley's outside counsel was acting on behalf of Wiley during these negotiations and thus Wiley is bound by any agreement reached through its outside counsel.  Conversely, if the latter occurred and Wiley did have a stark change of heart, that also is not a proper basis for abandoning the terms of the parties' agreement.  *See Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC*, No. 04-cv-1621 (KMW) (AJP), 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) ("'Once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing.'" (citation omitted)).

Despite its best efforts, Wiley cannot seriously deny that the parties agreed to a settlement of only the claims in suit for a specified amount.  Plaintiff confirmed in writing his acceptance of Wiley's offer to settle only the claims in suit for a specified monetary amount. That exchange demonstrates the "meeting of the minds" necessary to form a binding agreement. Any "open issues" claimed by Wiley's counsel were ancillary and immaterial and disingenuously manufactured.

## REPLY ARGUMENT

**1. Wiley's claim that it expressed an intent not to be bound until a written agreement was signed by both parties is demonstrably false.**

Wiley's opposition repeatedly suggests that both parties "expressed [an] intent not to be bound absent a written agreement executed by both Plaintiff any Wiley."  (Wiley Opp. at 1.)  In support of this contention, however, Wiley is unable to identify a single written exchange prior to the agreement reached by the parties on February 13, 2015 where either party expressed such

an intent.  Instead, Wiley can point only to its own actions and communications *after* Plaintiff accepted Wiley's offer of settlement.

As this Court repeatedly has held, such "after-the-fact professed intent" is not sufficient to demonstrate an express reservation of the right not to be bound because it was not "explicit" and such terms should not be "implied" or read into the parties' bargained for understanding by the Court.  *E.g.*, *Hostcentric Technologies*, 2005 WL 1377853, at *6.  Wiley's reliance on the language from its proposed written agreement suggesting that the agreement is not binding until executed is inapposite and cannot somehow *retroactively* cure Wiley's failure to expressly state its intent not to be bound prior to the parties' consummated agreement.  *See Willgerodt ex rel. Majority Peoples' Fund for the 21st Century, Inc. v. Hobri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Afterthought or change of mind are not sufficient to justify rejecting a settlement."), *aff'd*, 159 F.3d 1347 (2d Cir. 1998).

### 2. Plaintiff's reference to the settlement agreement as "tentative" does not void the parties' bargained-for agreement.

Because Wiley cannot point to any of its own conduct or communications prior to the parties reaching an agreement on a monetary settlement amount in exchange for a limited release, Wiley instead relies on Plaintiff's counsel's reference to the settlement agreement as "tentative" as proof of the parties' intentions.  But this single word in a single e-mail does not void or alter the agreement reached by the parties.  As the Second Circuit has indicated, it is the language of the objecting party that is crucial in determining whether that party expressed its intent not to be bound.  *See, e.g.*, *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  Following *Winston*, this Court also has held that "much more is needed" for a party objecting to an agreement to demonstrate that it explicitly and unambiguously reserved its right not to be bound.  *See Hostcentric Technologies*, 2005 WL 1377853, at *6

Again, even if Wiley were correct that this single word somehow precluded the formation of a fully binding agreement, there cannot be any serious dispute that the parties reached at least a "preliminary binding agreement" that obligated Wiley "to negotiate the open issues *in good faith* in an attempt to reach the alternate objective *within the agreed framework*" and thus Plaintiff may demand "that [Wiley] negotiate the open terms in good faith toward a final contract incorporating the agreed terms." *Teachers Insurance and Annuity Assoc. of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987) (citing *Sommer v. Hilton Hotels Corp.*, 376 F. Supp. 297 (S.D.N.Y. 1974)) (emphasis added).

As the written exchanges between the parties' counsel clearly show, Wiley's counsel did not even attempt to negotiate any alleged "open issues" in good faith, and certainly did not attempt to negotiate "within the agreed framework" of a limited release settlement. The Court cannot allow Wiley's counsel to get away with wasting months of the parties and the Court's time.

### 3. The alleged "open issues" identified by Defendant's counsel are red herrings and immaterial to the parties' agreement.

In repudiating the parties' agreement, Wiley's counsel contended that there were significant "open issues" that remained. (*See* McCulloch Decl. Ex. 12.) Wiley's opposition brief repeats this party line. The issues identified by Wiley, however, are red herrings and immaterial to the parties' agreement.

Setting aside the "scope of the release" issue which the record conclusively shows was not an open issue, Wiley's counsel points to three terms that remained open: (i) whether Wiley would obtain a forward-going license; (ii) the merger clause; and (iii) the timing of payment. Taking each in turn, it is clear that these issues were not open and did not preclude, at the very least, the formation of a "preliminary binding agreement."

5

As to the forward-going "license," Wiley demanded this term for the *first time* only *after* the parties reached an agreement on a monetary settlement amount for the claims in suit.  There was not a single reference to any "license" at any point in the parties' discussions between November 2014 and February 2015.  (*See, e.g.*, McCulloch Decl. Exs. 1-9.)  The demand for additional usage rights on a forward-going basis thus is a new demand for a different contract entirely, and should be treated as such.  *See V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir. 1968) ("Such negotiations on new provisions do not defeat the original agreement of the parties."); *Hostcentric Technologies*, 2005 WL 1377853, at *8 ("Had Republic wished such indemnification, it should have included that term in its 'final settlement counter-proposal' email, but it did not.  The addition of this new term does not tip the third factor to Republic.").

Wiley's reliance on this new provision to attempt to avoid the parties' binding agreement also must be rejected because the parties expressly negotiated a provision for Wiley to obtain copyrights in the at-issue photo for an additional monetary amount, but Wiley's counsel expressly declined this option and made clear that its settlement offer was not predicated on acquiring any copyrights in the photo:

> Mr. McCulloch:  "I just want to be clear as to whether this offer includes a requirement of Mr. Warren transferring copyright in the photo to Wiley."
>
> Mr. Rosenthal:  "No, that would not be a requirement."

(McCulloch Decl. Ex. 6.)  Wiley's subsequent, after-the-fact demand for a perpetual, open-ended license is an attempt to obtain essentially all the benefits of a copyright transfer without having to pay for those additional benefits.

Wiley's contention that the right to sell its existing inventory of 7,585 books is a substantial concern is disingenuous in light of its position, both in this case and throughout settlement talks, that it has a valid license to sell hardcover books that runs through 2017.  (*See*

McCulloch Reply Decl. Ex. 21.)  Given Wiley's refusal to add value to the settlement amount due to its contention that it had a valid license to sell hardcover books and that this license runs through 2017, it cannot now abandon the settlement process on the ground that it requires a forward-going or sell-through license since it already claimed that it has a valid license that would allow it to sell less than 8000 copies of books in the next 2+ years.[1]

Wiley's contention that the merger clause is an open issue also fails because, since there is no license in the settlement agreement, there is no need for a merger clause to "supersede" the terms of its 2007 license.

This leaves as the only supposed "open issue" the timing of payment.  Wiley's proposal was to pay in 21 days (McCulloch Decl. Ex. 11) and its counsel assured that Wiley "will do its best to pay as quickly as possible" (*id.* Ex. 12).  Given these statements, the timing of payment is not a true "open issue" and certainly would not, standing alone, be a basis for finding that the parties did not reach a binding agreement.  *See, e.g.*, *V'Soske*, 404 F.2d at 500 ("But that these parties failed to agree as to the valuation of audited net worth does not convince us that the term is intrinsically so difficult to ascertain as to defeat the contract.").

## CONCLUSION

For all of these reasons, Plaintiff requests that the Court find that the parties reached a binding agreement to settle only the claims in suit or compel Wiley to negotiate a final agreement within the parameters of the parties' agreement to settle only the claims in suit and not any broader release.

---

[1] If Wiley's license did not permit Wiley to sell hard cover copies of the book through 2017, then Wiley has been knowingly violating its license during this litigation and is unquestionably a willful infringer.

Dated:  New York, New York
        April 6, 2015

NELSON & McCULLOCH LLP

_____
Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
155 East 56th Street, 3rd Floor
New York, New York 10022
T: (212) 355-6050
F: (646) 308-1178
dan@nmiplaw.com
kevin@nmiplaw.com

*Counsel for Plaintiff*